[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was commenced in the Small Claims Division and transferred to the regular docket at the request of the defendant The plaintiff filed a four count complaint alleging breach of contract, quantum meruit, negligence and intentional misrepresentation, and intentional infliction of emotional distress. The defendant has filed several special defenses, including statute of limitations, consent agreement defense, laches, accord and satisfaction, express and implied waiver, mutual mistake, and estoppel.
The plaintiff, Robert LaMontagne was employed by the defendant for a period of twenty three years. At the time he left the defendants employ in 1994, and for some time prior thereto he held the position of foreman. This dispute arises as to whether the defendant promised the plaintiff a bonus incentive for working on out-of-state jobs. It is the plaintiff's claim that such an enforceable agreement existed and the defendant denies that such an agreement was never authorized or existed
The plaintiff claims that in 1992 the defendant, a building contractor, had taken work in Rhode Island at Arlon Industries (hereinafter Arlon) and asked him whether he would be interested in working out-of state. The plaintiff for a number of reasons was not interested in working away from home Fred Musano Jr., told him he would get a special bonus for working out-of-state, approximately $200.00 per week. After weighing the pros and cons, the plaintiff agreed to work on the Arlon job. He did not receive his bonus and periodically asked Fred Jr. about it but was told that it would be paid. In 1993, the defendant took a job in New Jersey at Arrow Associates (hereinafter Arrow) and was again asked by Fred Jr. to take this out-of-state job as well. Mr. LaMontagne, at that point, had not received the incentive bonus that he was promised for the Arlon job and therefore again inquired about both the bonus due him and whether he would also be paid a bonus for this job. He was told that Fred Sr. was in the midst of a federal labor investigation and that for this reason the old bonus was not paid but was assured the plaintiff that the same bonus arrangement existed for this job. The plaintiff agreed to do the Arrow job. Towards the end of 1993, CT Page 6769 when the federal labor investigation was finished, the plaintiff was asked to sign a release for the government He signed, upon the assurance of Tony Musano, that this would not affect his bonus. In early 1994, the plaintiff went into Fred Sr's office and inquired about his bonus and was told that he was not getting a bonus. Mr. LaMontagne decided to look for a new job and he left the defendants employ in May or June, 1994.
There was considerable testimony as to whether other employees received bonus incentives for working out-of-state. The defendant admits that hourly wage employees, those other than foremen, were given such bonuses. It was the defendant's claim that the foremen who were salaried employees did not get any incentive bonuses for out-of-state work until March, 1994, when they instituted a policy to pay such bonuses to foremen equivalent to twenty percent of their salary. This new policy did not effect the plaintiff since he did not engage in any out-of-state work after the policy was adopted. It was the defendant's claim that prior to this change and prior to the federal investigation, salaried foremen were only given additional compensation other than Christmas bonuses from the "black book". The defendant kept a record of every additional hour a foreman would work over forty hours and would at various times or a upon request would pay the foreman employee, the booked hours times his hourly rate. If the foreman wanted to take time off, the hours would be deducted from the black book. It was this system of compensation for the foremen that the federal labor board found improper which resulted in the defendant paying additional monies to the foremen, including the plaintiff. In any event, it was the defendants position that in so far as the foreman were concerned the only method of additional compensation pre investigation was from the black book. The defendant claims no agreement was made with the plaintiff for an out-of-state incentive bonus nor were any out-of-state incentive bonuses paid to any of the other three foremen working for the defendant. The more credible evidence, however, is that there were bonuses paid to other foremen for out-of-state work and that there was an agreement to pay the plaintiff a bonus for his out-of-state work.
There is no question that the defendant company gave incentive bonuses for out-of-state jobs. The defendant's admit that hourly employees were so compensated. There was credible testimony that salaried employees were similarly compensated. In addition to the plaintiff, there were three other foremen employed by the defendant, Andrew Rakich, Bill Thibedeau and John CT Page 6770 LaMontagne. Mr. Rakich testified that he received a bonus for every out-of-state job he worked. That testimony was substantiated with the 1992 payroll records that showed he was paid a $500.00 bonus on December 22, 1992. The court does not find that this was a payment from the black book since the black book had a negative balance at that time, nor was it a Christmas bonus since that was paid on December 23, 1992. The records and credible evidence showed that Mr. Thibideau was paid a bonus in July, 1992. Mr. Musano confirmed these payments and when asked what they represent, responded "they probably represented an incentive for going away to do a job out-of-state." (Ex D p 20). The Court is convinced that salaried employees, did receive incentive bonuses for out-of-state work prior to the March, 1994 meeting when the defendant adopted a firm policy to pay incentive compensation. The Court believes the testimony of the plaintiff that he was promised an incentive bonus and that he thought it would be paid until he was told by Fred Sr. in 1994 that he would not be paid a bonus. The Court does not find that the plaintiff sustained any of the other injuries he claims. The misrepresentation and emotional distress claims of the plaintiff are without merit and the Court does not find any credible evidence that supports these allegations. The plaintiff was well compensated for his services including expenses for his out-of-state work. Other than his claim for the incentive bonus, there is no credible evidence that he incurred any other damages that he has claimed. The Court finds that the more credible evidence as to the number of weeks the plaintiff worked at Arlon was four weeks and that he spent ten weeks at Arrow, as was the testimony of Fred Sr. Given the testimony that the hourly employees receive $100.00 per week for their incentive out-of-state bonuses and that the other foremen received more than that amount for their out-of-state bonuses, the Court finds that the bonus agreed to be paid to the plaintiff was $200.00 per week.
The defendant has raised statute of limitation defenses which it claims bars this action. It is the defendant's position that Conn. General Statutes Sec. 52-596 precludes an action for payment of "remuneration for employment" after two years from the time the right accrues. The defendant also relies on a federal statute, 29 U.S.C. § 255 which also prohibits a claim for "unpaid minimum wages, unpaid overtime" after two years from the date of accrual. The Court finds that the breach occurred at the time Fred Sr. told the plaintiff that he was not getting a out-of-state incentive bonus. This was after both the federal investigation and the consent agreement was signed. The Court accepts the CT Page 6771 testimony of the plaintiff that he always felt he was going to get this bonus and that he always received everything he was promised in his many years with this employer and that he simply had to wait before he would be paid. It was not until the time in 1994 when Fred Sr. told him for the first time that he was not getting this bonus did this cause of action arise. This event must have occurred on or about March of 1994 since the plaintiff testified that he did not resign at that time, but left a few months thereafter in May or June, 1994. If this event occurred in March, then even if these statutes apply this action was filed timely since it was commenced in February, 1996.
Regardless of whether this event occurred before or after February 20, this Court does not feel that these statutes apply. Section 52-596 concerns "remuneration for employment payable periodically". This bonus was not remuneration of this type. It was an incentive bonus, payment offered to work away from home. The court agrees that the language of the statute is clear and unambiguous and the court must accepts what it says. Reichert v.Sheridan 34 Conn. App. 521, 527. Similarly the court does not agree that 29 U.S.C. § 255 is a bar to this action. This is not a claim for unpaid wages or overtime or liquidated damages. Out-of-state bonus incentives, like a bonus for the absence of medical claims, are not payments intended to compensate for services and therefore claims such as the instant one do not fall within the purview of this statute. Featsent v. City of Youngstown70 F.3d 900, 905 (6th Cir. 1995)
The defendant next argues that the consent agreement signed by the plaintiff, and made Defendant's Exhibit 7, is a bar to this action. That agreement precludes an action for back wages. This action is not for back wages, but for an incentive bonus. The execution of the consent agreement did not bar this action. The other claims of the defendant of waiver, estoppel and mutual mistake were not supported by the evidence and therefore will not be addressed.
Judgment will enter for the plaintiff in the amount of $2,800.00.
(Pellegrino, J.)